IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LIGHTSIDE TECHNOLOGIES LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>ZTE CORPORATION, and<br>ZTE (USA) INC.<br><br>    Defendants. | C.A. No. 3:19-cv-02128<br><br>PATENT CASE<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Lightside Technologies LLC ("Lightside" or "Plaintiff") files this Complaint for Patent Infringement against Defendants ZTE Corporation, and ZTE (USA) Inc. (collectively "ZTE" or "Defendants").

**NATURE OF ACTION**

1.  This is an action for infringement of U.S. Patent Nos. 8,374,253 ("the '253 Patent") and 8,873,640 ("the '640 Patent") (collectively the "Patents-in-Suit").

**PARTIES**

2.  Lightside is a Texas limited liability company with a principal place of business at 700 Lavaca St., Suite 1401, Austin, TX 78701-3101.

3.  ZTE Corporation is a corporation organized and existing under the laws of the People's Republic of China with its principal place of business in ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nansham District, Shenzhen, Guangdong Province, P.R. China 518057. This Defendant does business in the state of Texas and in the Northern District of Texas. This

Defendant may be served with process at its principal place of business at ZTE Place, Keji Road South, Hi-Tech Industrial Park, Nansham District, Shenzhen, Guangdong Province, P.R. China 518057.

4. ZTE (USA) Inc. is a New Jersey corporation with its principal place of business in Richardson, Texas. This Defendant does business in the State of Texas and in the Northern District of Texas. This Defendant may be served with process through its agent, Jing Li, 2425 N. Central Expressway, Suite 323, Richardson, Texas 75080.

5. This action is commenced against the Defendants under 35 USC § 299(a) in a single action because (1) any right to relief is asserted against the Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused television products; and (2) questions of fact common to all Defendants will arise in this action.

## JURISDICTION AND VENUE

6. This action arises under the Patent Act, 35 U.S.C. § 1 *et seq*.

7. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331 and 1338.

8. This Court has personal jurisdiction over Defendants because (i) Defendants conduct business in this District, directly or through intermediaries; (ii) at least a portion of the alleged infringements occurred in this District; and (iii) Defendants regularly solicit business, engages in other persistent courses of conduct, or derives revenue from goods and services provided to individuals in this District.

9.  Venue is proper in this Judicial District under 28 U.S.C. § 1400(b).

## THE PATENTS-IN-SUIT

10. On February 12, 2013, the United States Patent and Trademark Office ("USPTO") issued the '253 Patent, titled "Wide-Band Multi-Format Audio/Video Production System With Frame-Rate Conversion," to Ken Washino of Dumont, NJ. A true and correct copy of the '253 Patent is provided at Exhibit A.

11. On October 28, 2014, the USPTO issued the '640 Patent, titled "Wide-Band Multi-Format Audio/Video Production System With Frame-Rate Conversion," to Ken Washino of Dumont, NJ. A true and correct copy of the '640 Patent is provided at Exhibit B.

12. Plaintiff is the owner and assignee of all substantial rights, title, and interest in the Patents-in-Suit.

13. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282(a).

## BACKGROUND

14. Ken Washino is the inventor of the inventions claimed and disclosed in the Patents-in-Suit.

15. Mr. Washino is the epitome of the ingenuous tinkerer who used inventive skills and a deep understanding of the industry to resolve a long standing problem and succeeded where others had failed.

16. Mr. Washino was born in Aichi Prefecture, Japan, on February 21, 1953. His parents operated a small commercial farm in this rural area. He became interested in communications and electronics at an early age, acquiring an amateur ham radio license by the time he was thirteen years old. During his junior high school and high school years, he built a

transmitter and receiver from salvaged parts of an old tube television. From such experiences, he learned the basics of analog communications.

17. In 1974, Mr. Washino found a position as an audio recording engineer with a Japanese documentary film company working in the U.S. This expanded to other production and post-production tasks. During the years that Mr. Washino worked in this business, he gained a working knowledge of film production and of production and post-production processes.

18. After Mr. Washino returned to Japan, he earned an Electronics Engineering degree from Nihon Kogakuin Technical College in Tokyo in 1979, and in 1981 acquired a first class broadcast engineering license. By that time, Mr. Washino was already working as a camera design engineer for Ikegami, a Japanese manufacturer of high-end video cameras. In 1985, he was appointed Video Field Sales Engineer and sent to the U.S. This experience enabled Mr. Washino to acquire a deep insight into the competitive market for equipment and services and to appreciate the needs of and problems encountered by video professionals. Mr. Washino then decided to establish himself in the U.S. permanently and formed his own video services company, focused on video production, post-production, and video cassette duplication in New York City.

19. By late 1986, Mr. Washino had acquired the market knowledge, technical skills, and financial resources to begin working on some of the ideas he had to improve efficiency and preserve quality in video field production. He identified the need for a universal camera control system and developed a prototype. Subsequent experimentation with early digital video devices soon lead to his 1992 inventions for Video Field Production, Video Monitoring and Conferencing, and PC-Based Audio/Video Production. In 1989, Mr. Washino began working on high-speed video duplication and filed his first patent application in 1993.

20. From then on, Mr. Washino developed a long series of inventions related to video production, post-production and signal distribution that could accommodate the coming digital and High-Definition "multiple format" future.

21. By October, 2014, Mr. Washino had been granted twenty U.S. patents on inventions for which he is the inventor or co-inventor, with fourteen foreign equivalents.

22. The Washino '253 and '640 Patents are directed to the field of video production, photographic image processing, and computer graphics. The inventions disclosed in the '253 and '640 Patents include methods performed by portable video image recording devices under which video image content received by an image sensor of the device is sampled, processed, and recorded at a first frame rate and enabled to be played back at a second frame rate different than the first frame rate. The image resolutions in pixels used to record and playback the video content may also differ. For example, the image resolution of the video content when played back may be upscaled or downscaled relative to the image resolution used to record the video content.

23. Under a slow-motion video recording mode, video image content received at a device's image sensor is sampled and recorded in real time at a first frame rate that is higher than a second frame rate at which the recorded video content is played back. Since the frame rate at which the video content is recorded is higher frame rate than the play-back frame rate, the frames of the video are played back at a slower rate than the real-time frame rate used for recording the frames, resulting in the video content being displayed in slow-motion.

24. Upon information and belief, ZTE made, sold, offered for sale, used, and/or imported ZTE mobile phones including at least the "Accused Products" listed in the following table in the United States that implemented the claimed inventive concept of the Patents-in-Suit.

Each of the following ZTE Axon smartphone models include support for slow-motion video (all data from www.phonedb.net):

| Model | Approximate Availability | Processor |
| --- | --- | --- |
| ZTE Axon Pro A1P LTE NA 32GB | July 2015 | Qualcomm Snapdragon 810 |
| ZTE Axon Pro A1P LTE NA 64GB | October 2015 | Qualcomm Snapdragon 810 |
| ZTE Axon 7 A2017U Dual SIM LTE NA 64GB | July 2016 | Qualcomm Snapdragon 820 |
| ZTE Axon 7 Mini A7S Dual SIM TD-LTE US | October 2016 | Qualcomm Snapdragon 617 |
| ZTE Axon 7 Premium Edition A7G343 Dual SIM TD-LTE NA 128GB | November 2016 | Qualcomm Snapdragon 820 |
| ZTE BV8P121 Blade V8 Pro Dual SIM LTE / Z978 | January 2017 | Qualcomm Snapdragon 625 |
| ZTE Z986U Blade Max 3 LTE-A | April 2017 | Qualcomm Snapdragon 625 |
| ZTE Z986DL Max Blue 4G LTE-A | April 2017 | Qualcomm Snapdragon 625 |

25.    During a product launch event in New York City on July 14, 2015, ZTE USA debuted its flagship ZTE Axon smartphone (ZTE Mobile World 2016 No. 1 publication, https://www.slideshare.net/soksitha/mobile-world-2016-no1-zte-blade-s7, March 5, 2016 (Exhibit E)).

26.    ZTE promoted and demonstrated the Axon Pro models during the "ZTE Experience Tour," which began in November 2015 and continued through February 2016. "The ZTE Experience Tour is a mobile showcase of the various technologies ZTE provides its consumers. From the sleek and portable Spro 2 smart projector to the Axon by ZTE, the ZTE Experience will let fans get their hands on amazing technologies they've never seen before." https://web.archive.org/web/20151124155501/http://www.zteusa.com/ztetour/



The ZTE Tour Experience

https://www.youtube.com/watch?v=OD-NEiUv1WM

27.     Phase 1 of the "ZTE Experience Tour" included promotion and demonstration of ZTE products include the ZTE Axon mobile phones at the following locations (Tour schedule dates in parenthesis):

- Chicago, IL, (11/13/15 – (est.) 11/17/15)
- Cleveland, OH (11/19/15 to 11/23/15)
- Toronto, ON (11/25/15 to (est.) 11/29/15)
- Philadelphia, PA (12/1/15 to 12/2/15)
- New York, NY (12/4/15 to (est.) 12/5/15)
- Baltimore, MD and/or Washington D.C.  (est. 12/6/15)
- Richmond or Newport News, VA (est. 12/7/15)
- Raleigh, NC (12/9/15)
- Atlanta, GA (12/10/15 to 12/13/15)

- New Orleans, LA (12/16/15)

- Houston, TX (12/18/15 to 12/22/15)

- Dallas, TX (12/24/15 to 12/26/15)

- Las Vegas, NV (12/30/16 to 1/9/16) Consumer Electronics Show

- Los Angeles, CA (Dates Unknown)

- San Diego, CA (Dates Unknown)

- San Francisco, CA (Dates Unknown)

- Bellevue, WA (2/26/16) T-Mobile Corporate Campus

- Seattle, WA (2/27/16)



https://web.archive.org/web/20160404143319/https://www.zteusa.com/ztetour/

28. Further details of the Tour and ZTE's marketing plans are provided in the ZTE Mobile World 2016 No. 1 publication (Exhibit E), including:

- "This tour was conceived in July 2015. On July 14, AXON made its debut in New York. Before its debut, we did many online campaigns. After its debut, offline marketing became more important. From social media, we got some feedback that consumers would like to experience this product first-hand before deciding whether to buy it or not. Because AXON was launched in the open market, people cannot go to a carrier's store for a try-out like they used to. So we came up with the idea of a mobile flagship store."

- "A ZTE road show truck stops in about 20 big cities and over a hundred small cities. In every stop, the truck would park in a crowded place to showcase our products. Usually, we would stay in a big city for two or three days. For some big events, we may also stay longer. At a Knicks game played on December 4, 2015, the truck parked at the 7th Avenue in New York for a whole day. In some small cities, we may team with carriers to hold activities."

- "Around 2 million people will feel and touch ZTE's products at ZTE's road show truck when we finish the tour."

- "The ZTE Experience Tour will finish in March. In 2016, we plan to explore a new route in the west. We will cover more areas, plan more activities, and give more consumers the ability to test our products. This is also a way to prepare for the launch of new products. There will be two routes in 2016 and probably three

in 2017. Such kind of activity has a high return of investment and may last for more years."

- "Our campus campaign will include 50 colleges, including Stanford, UTA, Rice University, and SMU. We will select some influential events from these colleges."

29. In December 2015, ZTE shot the first TV commercial for AXON casting by Chandler Parsons from the Dallas Mavericks as the spokesperson.

https://www.youtube.com/watch?v=CRpw2MNQgwM



30. In February 2017, ZTE published a series of advertisements for its Axon 7 under the "Have You Heard" … about advertising campaign.  These advertisements include "Have You Heard" … about the Axon 7 Camera? (https://www.youtube.com/watch?v=jf-_tvNn2JE), which was focused on the features of the Axon 7 Camera and demonstrates the Axon 7 performing slow-motion video.



**ZTE'S KNOWLEDGE OF THE PATENTS-IN-SUIT**

31. Upon information and belief, ZTE was a member of RPX in January 2015.

32. Upon information and belief, TangibleIP, which was brokering a patent portfolio of Ken Washino's patents including the '253 and '640 Patents under "Multi-format, Inc.," provided patent materials relating to the '253 and '640 Patents to RPX on approximately January 5, 2015, including an Executive Summary and copies of the '253 and '640 patents.

33. The Executive Summary included descriptions of the '253 and '640 patents, and further identified that the '253 and '640 patents had claims covering slow-motion video, stating, "Smartphones supporting slow-motion video. A feature that has been recently added to most smartphones is support for slow-motion video recording and playback. The recording and

playback of slow-motion video necessitates a frame-rate conversion, and the video content may be encoded at a different resolution than the native resolution of the smartphone's display."

34. The Executive Summary included a link to a "Generic Smart Phone Slow-motion corresponding Claim Chart (US Pat. No. 8,873,640)." This "generic" claim chart included infringement mappings of method claim 26 of the '640 Patent for each of the Samsung Galaxy S5, the HTC One M8, the Motorola Moto X (2014), and the LG G3, and demonstrated how each of these smartphone's support for slow motion video recording and playback infringed at least claim 26.

35. Upon information and belief, it was RPX's practice to provide its members patent-related materials for patents that should be of interest to those members. For example, patent-related materials relating to smartphones would be provided to each RPX member that might directly or indirectly infringe patents relating to smartphones; in the case of the Multi-format, Inc. portfolio, these RPX members included ZTE.

36. Upon information and belief, the Multi-format, Inc. patent materials were provided to ZTE sometime in January 2015.

**COUNT I**
**DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,374,253**

37. Plaintiff incorporates by reference each of its foregoing allegations.

38. Without license or authorization and in violation of 35 U.S.C. § 271(a), Defendants have directly infringed one or more claims of the '253 Patent in this Judicial District and throughout the United States, literally or under the doctrine of equivalents, by using their Accused Products, as exemplified by the '253 claim chart applied to the Axon 7 shown in Exhibit C.

39. The claims of the '253 Patent are understandable to a person of ordinary skill in the art who has the requisite education, training, and experience with the technology at issue in this case.

40. A person of ordinary skill in the art understands Plaintiff's theory of how Defendants' Accused Products infringe the claims of the '253 Patent upon a plain reading of this Complaint, the '253 Patent, and Exhibit C.

41. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim charts are intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they do not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,873,640

42. Plaintiff incorporates by reference each of its foregoing allegations.

43. Without license or authorization and in violation of 35 U.S.C. § 271(a), Defendants have directly infringed one or more claims of the '640 Patent in this Judicial District and throughout the United States, literally or under the doctrine of equivalents, by using their Accused Products, as exemplified by the '640 claim chart applied to the Axon 7 shown in Exhibit D.

44. The claims of the '640 Patent are understandable to a person of ordinary skill in the art who has the requisite education, training, and experience with the technology at issue in this case.

45. A person of ordinary skill in the art understands Plaintiff's theory of how Defendants' Accused Products infringe the claims of the '640 Patent upon a plain reading of this Complaint, the '640 Patent, and Exhibit D.

46. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim charts are intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they do not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT III
## INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NO. 8,374,253

47. Plaintiff incorporates by reference each of its foregoing allegations.

48. Without license or authorization and in violation of 35 U.S.C. § 271(b), Defendants has been knowingly inducing the direct infringement of one or more method claims of the '253 Patent by at least by one or more of making, using, offering for sale, selling and/or importing the Accused Products in this District and elsewhere in the United States that were designed and specifically intended to use and/or practice the methods and processes covered by '253 Patent, as shown in Exhibit C.

49. As described above, under information and belief Defendants had knowledge of the '253 Patent via patent materials provided to Defendants by RPX in January 2015.

50. Defendants have acted with specific intent to knowingly and actively induce infringement of the '253 Patent by, for example:

- Defendants' employees and/or agents demonstrating the slow-motion video capabilities of the Accused Products during the ZTE Experience Tour and/or other promotional activities such as ZTE-sponsored events and the ZTE campus campaign;

- Defendants' employees and/or agents actively encouraging users to test the slow-motion video capabilities of the Accused Products during the ZTE Experience Tour and/or other promotional activities such as ZTE-sponsored events and the ZTE campus campaign;

- Defendants' advertisement of the slow-motion video capabilities of the Axon 7; and

- User Manuals for each of the Accused Products, which show how to record and playback slow-motion video using the Accused Products.

51. The claims of the '253 Patent are understandable to a person of ordinary skill in the art who has the requisite education, training, and experience with the technology at issue in this case.

52. A person of ordinary skill in the art understands Plaintiff's theory of how Defendants' Accused Products infringe the claims of the '640 Patent upon a plain reading of this Complaint, the '253 Patent, and Exhibit C.

53. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim charts are intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they do not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT IV
## INDUCEMENT OF INFRINGEMENT OF U.S. PATENT NO. 8,873,640

54. Plaintiff incorporates by reference each of its foregoing allegations.

55. Without license or authorization and in violation of 35 U.S.C. § 271(b), Defendants has been inducing the direct infringement of one or more method claims of the '640 Patent by at least by one or more of making, using, offering for sale, selling and/or importing the Accused Products in this District and elsewhere in the United States that were designed and specifically intended to use and/or practice the methods and processes covered by '640 Patent, as shown in Exhibit D.

56. As described above, under information and belief Defendants had knowledge of the '640 patent via patent materials provided to Defendants by RPX in January 2015.

57. Defendants have acted with specific intent to knowingly and actively induce infringement of the '640 Patent by, for example:

- Defendants' employees and/or agents demonstrating the slow-motion video capabilities of the Accused Products during the ZTE Experience Tour and/or other promotional activities such as ZTE-sponsored events and the ZTE campus campaign;

- Defendants' employees and/or agents actively encouraging users to test the slow-motion video capabilities of the Accused Products during the ZTE Experience Tour and/or other promotional activities such as ZTE-sponsored events and the ZTE campus campaign;

- Defendants' advertisement of the slow-motion video capabilities of the Axon 7; and

- User Manuals for each of the Accused Products, which show how to record and playback slow-motion video using the Accused Products.

58. The claims of the '640 Patent are understandable to a person of ordinary skill in the art who has the requisite education, training, and experience with the technology at issue in this case.

59. A person of ordinary skill in the art understands Plaintiff's theory of how Defendants' Accused Products infringe the claims of the '640 Patent upon a plain reading of this Complaint, the '640 Patent, and Exhibit D.

60. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint. The claim charts are intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they do not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

**PRAYER FOR RELIEF**

Plaintiff requests the following relief:

A. Judgment that Defendants have directly infringed the Patents-in-Suit under 35 U.S.C. § 271(a);

B. Judgment that Defendants have knowingly and actively induced infringement of the Patents-in-Suit under 35 U.S.C. § 271(b);

C. An accounting of all infringing acts including, but not limited to, those acts not presented at trial;

D.  An award of damages under 35 U.S.C. § 284 adequate to compensate Plaintiff for Defendants' past infringement, together with interest and costs;

E.  Judgment that this case is exceptional under 35 U.S.C. § 285 and an award of Plaintiff's reasonable attorneys' fees and costs; and

F.  Such further relief at law or in equity that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable under Federal Rule of Civil Procedure 38(b).

Dated: September 9, 2019

Respectfully Submitted,

*/s/ Jay Johnson*
**JAY JOHNSON**
State Bar No. 24067322
**D. BRADLEY KIZZIA**
State Bar No. 11547550
**KIZZIA JOHNSON, PLLC**
1910 Pacific Ave., Suite 13000
Dallas, Texas 75201
(214) 451-0164
Fax: (214) 451-0165
jay@kjpllc.com
bkizzia@kjpllc.com

**ATTORNEYS FOR PLAINTIFF**